Charles A. Struble, Bar #009860
Renaud Cook Drury Mesaros, PA
One North Central Avenue, Suite 900
Phoenix, Arizona 85004
Telephone: 602-307-9900
Facsimile: 602-307-5853
*Attorney for Defendant*

Bryan P. Collins, Esq.
Robert M. Fuhrer, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Telephone: 703-770-7777
Facsimile: 703-770-7901
*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David A. Richardson, an individual, | |
| | No. 2:08-cv-01040-PHX-NVW |
| Plaintiff, | |
| | **MOTION FOR PARTIAL** |
| v. | **SUMMARY JUDGMENT** |
| | **OF NON-INFRINGEMENT** |
| The Stanley Works, Inc., a corporation, | **AND LACK OF WILLFULNESS** |
| | |
| Defendant. | **(Oral Argument Requested)** |

Defendant The Stanley Works, Inc. ("Stanley") pursuant to Rule 56(b), Fed.R.Civ.P., hereby moves for partial summary judgment in its favor on Plaintiff's design patent infringement claim (Count 1) now pending, and as to Plaintiff's willful infringement claim, as there can be no genuine issue of fact supporting infringement or alternatively objective

1

1  recklessness required to prove willfulness. This Motion is supported by the following
2  Memorandum of Points and Authorities.

### **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY ARGUMENT.**

This is a design patent infringement case.[1]  The crux of the case is straightforward and the material facts are uncontroversial: Do the accused Stanley Fubar™ tools look substantially similar to the ornamental, non-functional features of Richardson's patented design?  Given the lack of disputed facts, this design patent infringement issue is ripe for summary judgment determination.  *See Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988).  Summary determination is particularly appropriate in this case where the accused Fubar™ tools do not remotely resemble Richardson's design.  Accordingly, Stanley has filed this motion for summary judgment of non-infringement.  In addition, Stanley requests that this Court enter summary judgment in its favor on Richardson's claim of willfulness given the remarkable differences between the design patent and the accused products and the requisite "objective recklessness" standard required to establish willfulness under Federal Circuit caselaw.  *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1327 (Fed. Cir. 2008).

---

[1] Richardson also asserts a state common law unfair competition claim, which is the subject of a motion to dismiss, filed on September 10, 2008, and currently pending.  That claim is not the subject of this motion for summary judgment.

2

## II.    INTRODUCTION.

In his Complaint, Richardson accused five different Stanley Fubar™ tools of infringing U.S. Design Patent No. D507,167 ("the '167 patent").[2]  The Stanley Fubar™ products, as well as the tool depicted in Richardson's '167 patent, are tools designed for carpentry, demolition and construction.[3]  Facts ¶ 1.  They each comprise basic functional elements: (1) a handle for grasping, (2) a striking hammer head for delivering blows, (3) a jaw opposite the striking head for gripping objects, such as 2x4s at a construction site, and (4) a crow bar end for separating items.  Facts ¶ 2.[4]  Beyond the presence of these basic functional elements, the Richardson design and the Stanley tools look nothing alike.

As can be seen from even a cursory look at the Stanley Fubar™ tools, they are, like most tools, highly functional.  Specifically, they are designed for dismantling construction framing and general purpose demolition.  Facts ¶ 3.  In fact, the name "Fubar" is short for Functional Utility Bar, but is also a clever play on an acronym used to describe the ultimate demise of an object that has been subjected to its use.  Facts ¶ 4.



**Stanley FatMax® Xtreme Fubar™ Utility Bar**

**In Action**

---

[2] The accused tools include the FatMax® Xtreme Fubar™ Utility Bar, the FatMax® Functional Utility Bar, the FatMax® Xtreme Fubar™ III, and two models of the Fubar™ Forcible Entry tools.

[3] A humorous, but illustrative, demonstration of the Stanley Fubar™ tools can be found at www.stanleyfubar.com.

[4] The more recently released Forcible Entry Fubar™ tools also each include a wrench for opening a fire hydrant, and these tools are promoted as firefighter/emergency response tools.  Facts ¶ 3.  Nothing like this is remotely shown in Richardson's design patent.

The accused line of Stanley Fubar™ tools are designed as part of the FatMax® family of products. Facts ¶ 5. Stanley established the FatMax® brand of tools in 1999 and the brand has since grown to be one of Stanley's most innovative product lines in the company's 165-year history. Facts ¶ 6. The FatMax® line of hand tools features core tools essential for the pro or expert enthusiast who desires high quality, durable tools. Facts ¶ 7. A distinctive feature of the FatMax® line of tools is the thick, ergonomically designed hand grips resistant to slipping and adding comfort during strenuous jobs. Facts ¶ 8.

**III.   GENERAL PRINCIPLES OF DESIGN PATENT INFRINGEMENT LAW.**

Design patents are by their nature narrow in scope and protect only the novel, non-functional aspects of the ornamental design shown in the patent drawings. *See Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995); *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). Unlike utility patents, they do not protect the functional elements of a product. *See Oddzon*, 122 F.3d at 1405. Indeed, design patents have almost no scope. *In re Mann*, 861 F.2d at 1582 (Fed. Cir. 1988). They have but a single claim covering that which is shown in solid outline in the drawings. Everything shown in solid outline is material to the patented design. *In re Blum*, 374 F.2d 904 (CCPA 1967). All the drawing figures must be considered in the determination of infringement. *Keystone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993); *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed. Cir. 2002).

As with utility patents, determining whether an accused product infringes a design patent involves two steps. *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002); *Contessa Food Prods., Inc.*, 282 F.3d at 1376. First, the Court must

4

construe the patent claim to determine its meaning and scope as a matter of law. *See Catalina*, 295 F.3d at 1286. Second, the construed design claim is compared to the accused product to determine whether there is infringement.

This past September, the Federal Circuit, sitting *en banc*, reconsidered the proper test for determining design patent infringement, concluding that the proper test is the ordinary observer (a.k.a. substantial similarity) test and rejecting the additional points of novelty test[5] that had been used in prior cases. *Egyptian Goddess*, *Inc. v. Swisa*, *Inc.*, No. 2006-1562, ___ F.3d. ___, 2008 U.S. App. LEXIS 20104, at *35 (Fed. Cir., September 22, 2008). Also, as discussed below, prior art still plays an important role and is a factor to be considered in the substantial similarity test.

### A. Claim Construction.

In claim construction, the role of the district court is to determine the scope of the claim and define its metes and bounds. In *Egyptian Goddess*, the Federal Circuit re-emphasized that the district court is not required to attempt to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents. *See Egyptian Goddess*, at *39 (citing *Contessa Food Prods. v. Conagra*, 282 F.3d 1370, 1376 (Fed. Cir. 2002)). Nevertheless, the appellate court confirmed that it is important for a district court conducting claim interpretation to distinguish between those features of the claimed design that are ornamental and those that are functional. *Id*. (citing *Oddzon*, 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the

---

[5] The points of novelty test was applied as a separate test that identified the differences between the patented design and the closest prior art, and asked whether those points had been used in the accused product.

5

design as shown in the patent.")).  This is a critical issue here, because after the functional parts of Richardson's design are eliminated, it has nothing else arguably in common with the accused Stanley tools.

### B. The Substantial Similarity Test.

The second step of design patent infringement calls for the properly construed claim to be compared to the accused device, employing the "ordinary observer" or "substantial similarity" test articulated by the U.S. Supreme Court in *Gorham Co. v. White*:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

81 U.S. (14 Wall) 511, 528 (1871).  The *Gorham* ordinary observer test is met if, in the eye of the ordinary observer, the patented design as a whole is substantially similar in appearance to the accused device.  *See OddzOn*, 122 F.3d at 1405.  The ordinary observer is the purchaser of the product accused to infringe.  *See Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1117 (Fed Cir. 1998).

In reaffirming the *Gorham* ordinary observer test, and eliminating the so-called rigid points of novelty test, the Federal Circuit, in *Egyptian Goddess*, did not eliminate the role that the prior art plays in the design patent infringement analysis, and instead reaffirmed its importance as the context in which the analysis must be performed. Specifically, the Court stated:

> When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art.  And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer.

6

*Egyptian Goddess*, at *29.  The court also emphasized that those novel features that make the patented design different from the prior art are to be taken into consideration in performing the infringement analysis:

> Our rejection of the point of novelty test does not mean, of course, that the differences between the claimed design and prior art designs are irrelevant. To the contrary, examining the novel features of the claimed design can be an important component of the comparison of the claimed design with the accused design and the prior art. *Id*., at *34.

Irrespective of the context of the prior art, the Federal Circuit recognized that "[i]n some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required by Gorham." Thus, as a threshold matter, a determination of non-infringement can be made without resort to considering the prior art if the appearance of the accused product is not substantially the same as the patented design.  This is the case at hand.

**IV.   ARGUMENTS SUPPORTING A FINDING OF NON-INFRINGEMENT.**

   **A.   Claim Construction.**

Stanley emphatically submits to this Court that the differences between the accused Fubar™ tools and the Richardson design are plain, obvious and extensive.  That determination is even more apparent when viewed through the lens of proper claim construction and functionality considerations.  In that light, the only arguable things in common between Richardson's design patent and the accused Fubar™ products are the basic functional elements of the tools, which are not protectable by a design patent. Exemplary Figures from Richardson's '167 patent are included (see Complaint, Ex. A):

7



FIG.1

FIG.2

Richardson's design is for a "multi-function tool," ('167 patent, Title), which has various functional components. First and foremost, it has a handle. Facts ¶ 9. This is functional and necessary, as the user needs a place to grasp the tool for use. Second, it has a crow-bar on its lower end. Facts ¶ 10. This again is an obviously functional feature, as a crow bar is a commonplace device used to separate objects from one another (such as prying drywall from the underlying house frame). Facts ¶ 10. Third, it has a head comprised of two parts. The first part of the head is a striking hammer end, which functions exactly as one would expect: the user strikes objects with it like a hammer. Facts ¶ 11. The second part of the head is a jaw that faces opposite the hammer end, and can be used for grabbing onto objects, like 2x4s. Facts ¶ 11.

The functionality of Richardson's tool is confirmed by his own promotional material, which he attached to his original Complaint as Exhibit B. This is referred to as the "Stepclaw Ad." In that ad, the Stepclaw is shown and referred to as "a hammer that, when needed, can become a handy step for performing a variety of overhead work. The primary objective of this tool is to work as a hammer and also as a step to elevate the worker without a ladder – a quick solution which will save time, money, and labor[.]" It is also referred to as "[a] ruggedly constructed hammer with 'teeth,' it wraps around framework, holds onto wood, and creates an immediate step for the user." Nothing in the Stepclaw Ad refers to the

1 ornamental appearance of the product – it is promoted solely for its functional benefits, not
2 because it looks good or unique.

3 Based on this commonsense understanding of the patented tool, which is confirmed
4 by his own Stepclaw Ad admissions, it is clear that Richardson's design claim cannot be
5 interpreted to cover its basic functional elements. That is, the mere fact that a competitive
6 product has the functional elements of a handle, a crow bar end, and a head with a hammer
7 portion and an opposing jaw is not sufficient to infringe the '167 patent, as such subject
8 matter is functional and beyond the scope of Richardson's design patent. These features can
9 be protected, if at all, by a utility patent and subject to the rigors of an examination of their
10 functional merits. Richardson's design patent cannot be morphed into an unexamined
11 utility patent through claim interpretation.

12 This leads to the key question for the Court: What are the ornamental and non-
13 functional features of Richardson's '167 design patent? With regards to this wholly legal
14 question, Stanley submits that Richardson's design can only be interpreted as covering the
15 specific design disclosed, which includes specifically elements described below in
16 paragraphs (1) – (6). Pictures of Richardson's patented design with the associated
17 paragraph numbers are included in **Exhibit B** for the Court's convenience.

18 (1) <u>The rectangular handle</u>. Richardson's design includes a handle, which by
19 itself is a required functional element. Facts ¶ 9. But the specific shape of the handle is
20 depicted as being rectangular, with relatively sharp-corners. That particular shape of handle
21 is properly considered ornamental. Indeed, the specific shape is especially non-functional
22 as to the gripping aspect of the designed handle since the rectangle shape is not only
23 unnecessary, but it is actually an inferior design as compared to a smoother shape that

9

allows for a more comfortable grip. Thus, the rectangular shape of the handle is an ornamental part of the claimed design.[6]

(2) <u>The diamond-shaped crow-bar end and its specific orientation that is perpendicular to the head</u>. The mere presence of a crow bar end is functional, as discussed above. Facts ¶ 10. However, the particular diamond shape in the '167 design patent is not necessary to its function, particularly in the area where it tapers up into the handle. Moreover, its orientation to the long axis of the handle and perpendicular to the head at the other end is not functional, as the crow bar will function the same irrespective of its orientation (and since the handle is generally symmetrical, the crow-bar end orientation does not affect the gripping of the handle during crow-bar use). Facts ¶ 10. Thus, the diamond shape and orientation of the crow-bar end is an ornamental part of the design.

(3) <u>The symmetrical, rounded flat surfaces of the neck between the head and the handle</u>. These surfaces are not functional, and are a highly noticeable feature of Richardson's design (see feature (3) in **Exhibit B**). These flat surfaces extend from the handle to the head in an almost U-shape design when looked at in the view of Figure 2 of the '167 Patent (included above). This shaping is shown in solid lines and thus is part of the claimed design. Indeed, Richardson choice of design is poor from a striking or hammering standpoint, as a broad flat surface is more likely to "rebound" when hitting a solid object (as may occur when striking through drywall and hitting a hidden stud).

---

[6] Although Richardson's squared-off handle design is consistent with a design featuring the stepping aspect of the tool as described in the Stepclaw Ad, the fact that it has some function does not defeat the fact that he obtained a patent with the squared or rectangular handle as being part of the claim. The fact that it performs some function to promote a safer stepping area by providing a wider, flatter surface to stand on does not avoid the fact that he specifically claimed the entire handle as having a rectangular or square shape. Indeed, Richardson's design is a functional trade-off in design both ornamentally and functionally, showing a preference for the squared-off handle design conducive to a stepping tool, and sacrificing the benefits of a rounded, narrower, more-comfortable handle design. Facts ¶ 12.

1       (4) <u>Hammer head shape</u>. The Richardson design also has a striking hammer head 2 that is similar in appearance to the striking part of many conventional hammers. It is 3 rounded and has a smaller neck or connecting portion attaching it to the main body. While 4 such an element is functional, the particular shape chosen by Richardson is not dictated by 5 function, and must be regarded as ornamental. This is because the hammer head shape 6 could be provided with different ornamentations and still function to deliver blows, so long 7 as a striking surface is provided. Facts ¶ 13.

8       (5) <u>Jaw and Teeth Configuration with a Flat Upper Jaw</u>. The teeth shown on the 9 lower edge of the jaw in Richardson's design are clearly functional, as they serve to grip on 10 wood. Facts ¶ 14; *see also* Stepclaw Ad ("A ruggedly constructed hammer with 'teeth,' it 11 wraps around framework, holds onto wood, and creates an immediate step for the user."). 12 However, Richardson opted to depict, and thus claim, a very specific configuration and 13 arrangement. Specifically, he claimed a design with just two of these functional teeth on the 14 lower jaw (three if you count the outer edge as a tooth), and <u>no</u> teeth on the upper jaw. 15 Instead, the upper jaw has a smooth surface. By choosing to include these features in solid 16 lines in his design patent, Richardson made them a part of his claim, and he is limited to that 17 particular design as part of his claim scope.

18       (6) <u>Flat and Plain Sides.</u> The sides of Richardson's design are shown as being 19 completely flat, and running all the way from the lower edge of the jaw to the crow-bar. 20 These surfaces are claimed as being smooth and flat, and bear no ornamentation. This is 21 purely an ornamental design, because there is no functionality to being completely smooth 22 and flat versus having a different ornamental configuration. Facts ¶ 15.

23

Accordingly, Stanley requests the Court to adopt the foregoing features identified above as being among the ornamental features of the patented design. Although everything shown in Richardson's design is limiting since the entire design is in solid lines, *In re Blum*, 374 F.2d. 904 (C.C.P.A. 1967), the specific configurations and appearances of these features must be noted as being specifically ornamental because their otherwise functional attributes cannot be protected as part of the design.

## V. THE STANLEY FUBAR™ PRODUCTS DO NOT INFRINGE RICHARDSON'S DESIGN PATENT CLAIM.

### A. The Stanley Products Simply Do Not Look Like Richardson's Patented Design.

Rather than providing a detailed verbal analysis, Stanley has prepared a series of **Exhibits (C through G)**, each showing the respective accused Stanley products in comparison to the design of the '167 patent. The differences in ornamental features are called out with language to assist the Court in making a determination of non-infringement. As can be seen from viewing these Exhibits, it is clear that none of the Stanley products look remotely like Richardson's patented design.

In particular, none of these products has the rectangular handle (feature 1 above); the diamond-shaped crowbar end that is oriented or twisted so that it is perpendicular to the head at the other end (feature 2 above); the symmetrical rounded flat surfaces of the neck between the head and the handle (feature 3 above); the round traditional style hammer head (feature 4 above); the same jaw and teeth configuration with a flat upper jaw lacking teeth (feature 5 above); or flat and plain sides (feature 6 above). Indeed, each and every accused Stanley product is different in each and every one of these aspects, and taken together in the overall appearance of the products there is absolutely no way an ordinary observer, here a

1  carpenter, demolition or construction worker, could ever conclude that these are
2  substantially similar. Facts ¶ 16.
3    Moreover, when Richardson's design is considered in the context of the prior art, as
4  required by *Egyptian Goddess*, it is clear that any features that render Richardson's design
5  distinguishable from the prior art are not found in Stanley's accused products. Set forth
6  below is Figure 1 from Richardson's patent and a Figure from U.S. Patent Nos. D300,111
7  ("'111 patent") and 1,472,517 ("'517 patent"). See **Exhibit H**.

|  **Richardson**  |  **D300,111**  |  **1,472,517**  |
| --- | --- | --- |

15    Looking at Richardson's design compared to the prior art, it is clear that the features
16  that would render Richardson's design as different and noticeable to an ordinary observer
17  are: the diamond-shaped crowbar end that is oriented or twisted so that it is perpendicular to
18  the head at the other end (feature 2 above); the symmetrical rounded flat surfaces of the
19  neck between the head and the handle (feature 3 above); the round traditional style hammer
20  head (feature 4 above); and the jaw and teeth configuration with a flat upper jaw lacking
21  teeth (feature 5 above). The presence of a hammer and claw opposite one another and a
22  crowbar at the other end with its orientation perpendicularly aligned with the hammer head
23  and claw are similar to the 85 year-old design of the '517 patent entitled "Wrecking Tool."

See **Exhibit H**. This piece of prior art also supports the proposition that Richardson's crowbar design scope is limited to its non-functional and ornamental diamond shape design and orientation. Also, the flat rounded surfaces in the neck area between the head and the handle of Richardson's design are another differentiating point, as the prior design shown in the '111 patent has bumps or ridges in that same area. Another area is the jaw and teeth configuration, where Richardson's particular ornamental design is an apparent difference relative to both prior art patents.

Here, when the Richardson design is viewed in the context between the above-depicted prior designs and Stanley's accused products, it is clear that the ornamental, non-functional differences between the prior designs and Richardson's design are not present in the accused Stanley products. *See Egyptian Goddess*, at *35-6. That is, an ordinary observer having seen this prior art would not regard the Stanley designs to appear substantially similar in this context, and would not regard Stanley to have appropriated the ornamental invention of Richardson (to the extent that he invented anything at all).

### B. The USPTO Issued Stanley a Design Patent on the FatMax® Xtreme Fubar™ Design Over Richardson's Design Patent.

As further evidence of non-infringement, the US Patent & Trademark Office ("USPTO") issued U.S. Patent No. D562,101 to Stanley, attached hereto as **Exhibit I**, which depicts the full design of the accused Stanley FatMax® Xtreme Fubar™ Utility Bar. The Patent Examiner considered Richardson's patent, and determined that the Fubar™ design depicted in Stanley's patent is patentably distinct from the Richardson patent. This indicates that these designs do not look alike. *See* **Exhibit C.** This is an independent and

objective determination, and compelling evidence of non-infringement. *See Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006)(holding that distinctiveness in overall appearance constitutes the test of design patentability); *National Presto Indus., Inc. v. Wes Bend Co.,* 76 F.3d 1185, 1192 (Fed. Cir. 1996)("The fact of separate patentability is relevant and is entitled to due weight.").

### C. The Facts of This Case Are Analogous to *Oddzon*.

The facts of this case are analogous to the Federal Circuit's decision in *Oddzon Prods.*, *Inc. v. Just Toys*, *Inc.*, 122 F.3d 1396 (Fed. Cir. 1997). In *Oddzon*, the Federal Circuit affirmed a summary judgment of non-infringement in a case where the products were similar only with regards to the functional aspects of the patented design, and not the non-functional ornamental aspects. The products at issue in that case were footballs with fins attached, similar to the rear part of a dart or the end of a rocket. The Federal Circuit found this basic combination to be functional, as the fins increased the throwing distance of the football, and agreed with the district court's claim interpretation limiting the patent scope to certain ornamental features, such as the flare and curve of the fins. Further, the Court found that this functional similarity was insufficient to survive the accused infringer's summary judgment motion, and that it was incumbent upon the patent owner to show that the similarity between the patented design and the accused products was attributable to ornamental and non-functional features. *Id.* at 1405-6.

### VI. THERE IS NO WAY THE ALLEGED INFRINGEMENT CAN BE WILLFUL UNDER THE "OBJECTIVELY RECKLESS" STANDARD.

Richardson has also alleged that the infringement of the '167 patent by Stanley is willful, and seeks treble damages under 35 U.S.C. §284. As discussed above, there is no

1  infringement. But even if this Court were to determine that there is an issue of fact that
2  precludes summary judgment, it is clear that the infringement claim here is not so clear and
3  flagrant as to rise to the level of "objectively reckless" as set forth in the Federal Circuit's *In*
4  *re Seagate* decision. That decision confirms that the threshold issue for willfulness is
5  whether "the infringer acted despite an objectively high likelihood that its actions
6  constituted infringement of a valid patent." *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir.
7  2007). This determination of recklessness is a threshold issue that is determined by an
8  objective standard, and Stanley's subjective state of mind is not an issue unless objective
9  recklessness is first established (and hence there is no need for discovery to determine this
10 threshold issue). *Id*. This case is not close, and certainly is not close enough that it can be
11 considered an "objectively reckless" infringement.

## VII.  CONCLUSION.

No ordinary purchaser of the accused Stanley Fubar™ tools would find them to be "substantially similar" to the '167 design patent. This is particularly the case when the patented design and the accused products are viewed in the context of both the prior art and their functional usage. The practical realities of this case are straightforward and obvious. Richardson claims to have conceived a tool which he believed to be novel and inventive. To protect his alleged concept, he obtained a design patent that is limited to the specific ornamental appearance depicted in its Figures. But Richardson did not obtain a utility patent to cover the functional attributes of his tool. Then, Richardson retained an invention promotion company to distribute his promotional material in a scattershot fashion. Complaint at ¶¶ 10-11, [D.E. 1]. Disappointed that nobody bought into his very narrow tool

design, he now seeks to extract compensation from Stanley by pursuing this unnecessary litigation.

Instead of looking at each of the five Stanley products individually, noting that each accused tool has its own unique design features, Richardson attempts to lump them categorically into a generic pool of multi-functional hand tools. Despite the readily apparent fact that the various accused Stanley products themselves look different from one another, Richardson has accused them <u>all</u> of infringement. This proves beyond a doubt that he is simply attempting to ignore the ornamental limitations of his design patent and accuse any product with the basic functional elements of a handle, crow-bar end, hammer portion, and gripping jaw of infringement. This is nothing but a transparent attempt to transform his narrow ornamental design patent into a functional utility patent that Richardson does not own, does not assert, and should not be allowed to possess through a "back door" design patent infringement assertion.

Accordingly, for all the foregoing reasons, Defendant Stanley respectfully requests that this Court enter summary judgment in its favor as to Richardson's design patent infringement claim. Additionally, Stanley also requests that the Court enter summary judgment in favor of Stanley on Richardson's claim of willful infringement.

RESPECTFULLY SUBMITTED this 5th day of November, 2008.

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Bryan P. Collins*
Bryan P. Collins
Robert M. Fuhrer
1650 Tysons Boulevard
McLean, Virginia  22102
*Attorneys for Defendant*

17

|   |   |
|---|---|
| 1 | RENAUD COOK DRURY MESAROS, PA |
| 2 | */s/ Charles A. Struble* |
|   | Charles A. Struble |
| 3 | One North Central Avenue, Suite 900 |
|   | Phoenix, Arizona  85004 |
| 4 | *Attorneys for Defendant* |

COPY of the foregoing E-FILED
this ____ day of November, 2008,
and a copy hand-delivered to:

The Honorable Neil V. Wake
United States District Court
401 West Washington Street, SPC 52
Phoenix, AZ 85003

COPY mailed this same date to:

Geoffrey S. Kercsmar, Esq.
Gregory B. Collins, Esq.
THE KERCSMAR LAW FIRM, P.C.
3260 North Hayden Road, Suite 204
Scottsdale, Arizona 85251
*Attorneys for Plaintiff*

Daniel J. Noblitt, Esq.
NOBLITT & GILMORE, LLC
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona 85251-7630
*Attorneys for Plaintiff*


*/s/ Esther Gillett*