Geoffrey S. Kercsmar (#020528)
gsk@kflawaz.com
Gregory B. Collins (#023158)
gbc@kflawaz.com
KERCSMAR & FELTUS PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001

Daniel J. Noblitt (#015221)
dnoblitt@ngtechlaw.com
THE NOBLITT GROUP PLLC
4800 North Scottsdale Road, Suite 6000
Scottsdale, Arizona 85251
Telephone: (480) 994-9869

Co-counsel for Plaintiff David A. Richardson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Richardson, an individual,<br><br>                             Plaintiff,<br><br>   v.<br><br>Stanley Works, Inc., a foreign corporation,<br><br>                             Defendant. | No.  2:08-cv-01040-PHX-NVW<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT AND LACK OF WILLFULNESS**<br><br>**—AND—**<br><br>**CROSS MOTION FOR SUMMARY JUDGMENT ON INFRINGMENT**<br><br>(Oral Argument Requested) |

Several months ago, the infringement standard for design patents was rewritten by the Federal Circuit Court of Appeals.  An *en banc* panel of the Federal Circuit held in *Egyptian Goddess v. Swisa,* 543 F.3d 665, 681 (Fed Cir. 2008), that in any design patent

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

infringement case, "the question … is whether an ordinary observer, familiar with the prior art [], would be deceived into believing the [accused design] is [substantially the] same as the [patented design]."  Under this test and the authority cited by Stanley Works Inc. ("Stanley") in its motion, ***the patented invention must be considered as a whole.*** *See Amini Innovation Corp. v. Anthony California Inc.,* 439 F.3d 1365, 1371 (Fed. Cir. 2006) ("discounting of functional elements ***must not convert the overall infringement test to an element-by-element comparison***.") (emphasis added); *see also OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (infringement is found if "the patented design ***as a whole*** is substantially similar in appearance to the accused design") (emphasis added); *see also Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) ("the patented and accused designs are [to be] compared for ***overall visual similarity***").  Accordingly, while design patents cannot protect ***purely*** functional inventions, the functional parts of patented designs nonetheless remain relevant to infringement analysis.  A trial court's failure to consider the functional elements of an ornamental design is reversible error.  *See Amini Innovation Corp.,* 439 F.3d at 1371; *L.A. Gear, Inc. v. Thom McAnn Shoe Co.,* 988 F.2d 1117, 1125 (Fed. Cir. 1993).

When the design embodied by U.S. Patent No. D507,167 (the "'167 Patent" or the "Richardson patent") is viewed as a whole by a person familiar with the prior art, no reasonable person could find that Stanley's Fubars do not infringe the '167 Patent. There are no substantial differences between the '167 Patent and Stanley's Fubars that would be apparent to an ordinary observer familiar with the prior art.  An ordinary purchaser would almost certainly purchase one tool supposing it to be the other.  And an ordinary observer familiar with the prior art—which is substantially different from both the '167 Patent and Stanley's Fubars—would certainly conclude that Stanley's Fubars were actually Richardson's design.  Consequently, the Richardson patent is infringed. In fact, this is a quintessential case of infringement under the United States Supreme

Court's *Gorham* standard.  *See Gorham Mfg. Co. v. White,* 14 Wall. 511, 81 U.S. 511, 528, 20 L. Ed. 731 (1871).   For these reasons, summary judgment on the issue of infringement is appropriate in ***Richardson's*** favor—not Stanley's.    Moreover, there is at least a fact issue regarding whether Stanley's infringement is willful.

Richardson requests that the Court deny Stanley's Motion for Partial Summary Judgment of Non-Infringement and Lack of Willfulness, and enter summary judgment on the issue of infringement in favor of Richardson.   This Motion is supported by the following Memorandum of Points and Authorities and Richardson's Response Statement of Facts and Supplemental Statement of Facts in Support of Response and Cross-Motion for Summary Judgment ("PSOF").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    THE MATERIAL FACTS**

Richardson has worked in the field of carpentry for twenty-nine years.  (PSOF ¶ 26.)  Through his experience in carpentry, Richardson identified a need for alternatives and improvements to carpentry tools such as a conventional hammer and a stud climbing tool.  (*Id*. at ¶ 27.)  After considerable effort by Richardson to construct a unique design for a climbing and carpentry tool, on January 9, 2004, Richardson, through his agent George W. Wasson, filed with the United States Patent and Trademark Office an application for a design patent (the "Application").  (*Id*. at ¶ 28.)  After a thorough examination by a patent examiner in the U.S. Patent and Trademark Office, the Application was granted by the U.S. Patent and Trademark Office on July 12, 2005, as U.S. Letter Patent No. D507,167.  (*Id*. at ¶ 29.)

After the '167 Patent issued, Richardson worked with the Kessler Corporation to design a marketing brochure seeking to license the patented design.  (*Id*. at ¶ 30.)  The marketing brochure was sent to companies that Richardson believed would be interested in selling and mass-producing a product utilizing the '167 Patent's unique design.  (*Id.*

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

at ¶ 31.)   Stanley was among the companies that received Richardson's marketing brochure.  (*Id*. at ¶ 32.)  Despite declining Richardson's invitation to negotiate a license for the '167 Patent, in early 2006, Stanley began selling the FatMax Xtreme Fubar Utility Bar (the "Fubar").  (*Id*. at ¶ 33.)  Stanley currently markets several different versions of the Fubar: the FatMax Functional Utility Bar (the "Utility Bar"), the FatMax Xtreme Fubar III (the "Fubar III") and the Fubar Forcible Entry Tools (small and large size).  (Hereinafter, the Fubar, the Utility Bar, the Fubar III and the Fubar Forcible Entry Tools (small and large size) are referred to collectively as the "Fubars").)  Pictures of the Fubars were attached to Stanley's Statement of Material Undisputed Facts ("DSOF") as Exhibits C-G.

Stanley's Fubars, like the '167 Patent, include a hammer, a handle, a pry-bar, and a jaw with teeth.  (DSOF at ¶ 2.)   There are a myriad of possible tool designs that include a hammer, a handle, and a jaw with teeth.  (*Id*. at ¶ 43.)  Examples of tools that incorporate these features appear below:



Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Many of these examples would serve the same function as the tool depicted in the '167 Patent.  (*Id*. at ¶ 43)   As these examples show, each of the functions that can be performed by the tool set forth in the '167 Patent can be achieved in a way other than by the design of the '167 Patent.  (*Id*. at ¶ 167.)   Despite this, Stanley's Fubars utilize nearly the exact same design as the '167 Patent.




In fact, as the diagram below demonstrates, Stanley's Fubars more closely resemble the '167 Patent than any tool listed in the prosecution histories for either the '167 Patent or Stanley's U.S. Design Patent No. D562,101.



Accordingly, and as explained in detail below, in the eye of the ordinary observer, giving attention as a purchaser usually gives, the design of the Fubars and the

Keesmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

design set forth in the '167 Patent are substantially the same, such as to deceive the ordinary observer.  (*Id.* at ¶¶ 34, 36, 38, and 40.)    Stanley's Fubars infringe the '167 Patent.

## II.    THE STANDARD FOR DESIGN PATENT INFRINGMENT

Under 35 U.S.C. § 171, "Whoever invents any new, original, and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."  The statute promotes innovations in industrial design leading to the improved appearance of products, not their functional utility. Other sections of the patent statute apply equally to design patents, including those relating to the presumption of patent validity.  Unlike utility patents, however, design patents consist of a single claim, shown through a drawing.

The seminal case for design patent infringement is *Gorham*, which sets forth the fundamental test for design patent infringement: "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham*, 81 U.S. at 528.  This called the "ordinary observer" test and is firmly established as the proper standard for determining design patent infringement.

Despite the clarity of *Gorham*, modern Federal Circuit cases held that proof of similarity under the "ordinary observer" test was not adequate to establish design patent infringement.  These cases additionally required the accused design to "appropriate the novelty" of the claimed design in order to be deemed infringing.  This was known as the "point of novelty" test, and until very recently, was grafted onto the *Gorham* "ordinary observer" test to establish infringement of a design patent.

The "point of novelty" test was abolished on September 22, 2008, when the Federal Circuit issued its opinion in *Egyptian Goddess*.  *Egyptian Goddess* held that the

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

"point of novelty" test should no longer be used in analyzing a claim of design patent infringement. *Egyptian Goddess*, 543 F.3d at 681. Instead, in accordance with *Gorham* and subsequent decisions, *Egyptian Goddess* held that the "ordinary observer" test should be the sole test for determining whether a design patent has been infringed. *See id.*

In view of the simple *Gorham* "ordinary observer" test, this case is not especially complicated. The proper test simply focuses on whether Stanley's products are substantially similar to the Richardson design in the eyes of an ordinary observer that is familiar with the prior art. And as detailed below, Stanley's infringement is blatant and indisputable.

## III.    ARGUMENT

The fundamental test for design patent infringement is whether the defendant's products are "substantially similar" to the patented design in the eyes of an ordinary observer. The ordinary observer is deemed to be familiar with the prior art, and is expected to give such attention as a purchaser usually gives to such products. *See Gorham,* 81 U.S. at 528; *see also Egyptian Goddess*, 543 F.3d at 681.

In its motion, Stanley attempts to parse out as "functional" certain elements of the '167 Patent. But Stanley's parsing of the '167 Patent's functional features is defective and improper. Infringement analysis considers the ***overall design***, not the minutiae. The scope of the Richardson patent is defined by the appearance of the design ***as a whole***. Stanley's parsing is an attempt to deflect the Court's attention from the substantial similarity of the Fubars and the '167 Patent, and the legal test for design patent infringement long established by *Gorham*.

Within this analytical framework, and in view of the significantly different prior art, the ordinary purchaser would certainly conclude that the designs are substantially identical. As in *Gorham*, "whatever differences there may be between the plaintiff's

Kersmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

design and those of the defendant in details of ornament, ***they are still the same in general appearance and effect***, so much alike that in the market and with purchasers they would pass for the same thing—so much alike that even persons in the trade would be in danger of being deceived." *Gorham,* 81 U.S. at 531 (emphasis added).

### A.    Claim Construction is Based on Overall Appearance, Not Specific Elements.

Determining design patent infringement involves two steps.  First, the Court must construe the patent claim to determine its meaning and scope as a matter of law. Second, the construed design claim is compared to the accused product to determine whether there is infringement.

### 1.    Proper Claim Construction Considers the Patented Design as a Whole.

*Egyptian Goddess* operates as a useful tutorial for claim construction.  *Egyptian Goddess* begins at the beginning, with the *Gorham* "ordinary observer" test, which compares two designs for similarity.  This test recognizes that design patents are based on overall appearance, not individual subparts.  Thus, under the ordinary observer test, the issue is whether "the patented design ***as a whole*** is substantially similar in appearance to the accused design."  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (emphasis added).  The *Gorham* ordinary observer test is a ***visual*** test for overall similarity, not a comparison of the minutiae of the designs at issue. *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (for infringement, "the patented and accused designs are compared for ***overall visual similarity.***") (emphasis added).

Instead of performing a proper analysis of the patented design as a whole, Stanley's motion focuses on various features of the claimed design, attempting to separate ornamental features from those that are "functional."  In particular, Stanley's motion parses, element by element, the handle, the crow-bar, the hammer, the jaw, and

Keresmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

various other details. Stanley then concludes that only those details that serve no function whatsoever can be protected under the Richardson patent.

Stanley is correct that a design patent is not a substitute for a utility patent. *See Lee v. Dayton-Hudson Corp.,* 838 F.2d 1186, 1190 (Fed. Cir. 1988) (holding a device that copies the utilitarian or functional features of a design patent is not an infringement unless the ornamental aspects are also copied, such that the overall "resemblance is such as to deceive"). But proper claim construction requires examination of the design as a whole. "[I]t is the appearance of a design *as a whole* which is controlling in determining questions of patentability and infringement." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed. Cir. 1993) (emphasis added). The Federal Circuit has consistently held that a design patent protects the overall visual impression created by the combination of the ornamental features shown in the patent's drawings. *See Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1370-71 (Fed. Cir. 2006) (holding a design patent protects non-functional aspects of ornamental design seen as a whole) (citing *Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993)); *Durling v. Spectrum Furniture Co., Inc.,* 101 F.3d 100, 104 (Fed. Cir. 1996); *Lamps Plus, Inc. v. Dolan*, 2003 U.S. Dist. LEXIS 19578 at *9 (N.D. Tex. 2003) (finding proper construction of design patent focuses on overall visual impression of ornamental features), *aff'd*, 2006 U.S. App. LEXIS 1076 (Fed. Cir. 2006). While the functionality of each of the various elements that comprise the patented design may be relevant to determine whether the invention is functional as a whole, the ultimate question is whether the claimed design, viewed in its entirety, is dictated by the utilitarian purpose of the invention.

In fact, the Federal Circuit has expressly held that it is reversible error to conduct a claim construction that parses out the "functional" elements of a design, as Stanley proposes here:

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

The trial court mistakenly analyzed each element separately instead of analyzing the design as a whole from the perspective of an ordinary observer. ***The trial court is correct to factor out the functional aspects of various design elements, but that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison. Thus, the trial court erred in its application of the "overall similarity" test on summary judgment.*** This court cannot agree on this record that "no reasonable jury could find that the designs of these two pieces of furniture are substantially similar."

*Amini,* 439 F.3d at 1371 (emphasis added).

Accordingly, to evaluate Richardson's claim of infringement, the ***overall*** design of the '167 Patent must be considered, ***including any functional elements***. That design includes a handle with a pry-bar at one end and a hammer opposite a jaw at the other end. Utilitarian details of the design, such as the flat face of the hammer or the slot in the pry-bar, may serve useful purposes but the inclusion of such elements does not affect the overall design. As a result, tools like the Fubars that copy the overall design of the Richardson patent infringe because the accused product ***as a whole*** is substantially similar in appearance to the patented design.

**2.   The Defendant Relies on an Incorrect Definition of "Functional."**

Stanley's erroneous claim construction does not end with its attempt to parse out the functional elements of the '167 Patent before conducting an infringement analysis—an approach already rejected by the Federal Circuit Court of Appeals in *Amini*. Stanley also errs in defining which portions of the '167 Patent are "functional." In determining which elements are functional, Stanley applies a defective definition of the legal term

"functional."[1]  With regard to design patents, "functional" does not refer to whether a particular design or component has utility or "works."   Instead a design is ***purely*** functional only when no other design could possibly perform the function.   *See L.A. Gear*, 988 F.2d at 1123.

A design is functional "when the appearance of the claimed design is 'dictated by' the use or purpose of the article. If the particular design is essential to the use of the article, it cannot be the subject of a design patent." *Id.* at 1123 (citations omitted). Accordingly, the proper inquiry for determining functionality of a design is whether the ***overall*** appearance of the design is dictated by a utilitarian or ornamental purpose.  *Id.* Such a distinction makes it possible to obtain both a utility patent and a design patent on the same article.  *See Carman Indus. v. Wahl*, 724 F.2d 932, 938-39 (Fed. Cir. 1983).

In the present case, the overall design of the Richardson patent is not dictated by the use or purpose of the tool or of any useful elements found in the tool.  (PSOF ¶ 43.) The Richardson design provides a hammer, a pry-bar and a jaw.  (*Id.*)   A wide range of designs have been developed that offer various combinations of these elements and functions.  (*Id.*)   For example, DSOF Exhibits D and E demonstrate several different designs offering comparable functionality, some of which were considered by the PTO examiner before issuing the '167 Patent.   These various designs indicate that the '167 Patent design is not as a whole functional, because a design cannot be "dictated" by its purpose if other designs providing comparable functionality exist.  *See L.A. Gear*, 988

---

[1] The only factual support that the defendant offers for its argument that certain portions of the '167 Patent are functional is the affidavit of Stanley's Manager of Product Safety and Intellectual Property, Russell Powers.  (DSOF at ¶¶ 10-14.)  Mr. Powers' affidavit states unequivocally that certain aspects of the '167 Patent are "functional."  (*Id.*)  But during Mr. Powers' deposition, Mr. Powers admitted that he does not know the legal definition of the word "functional."  (PSOF at ¶ 9.)   According to Mr. Powers, something is functional if its "works."  (*Id.*)  As a result, Mr. Powers' opinion that certain aspects of the '167 Patent are "functional" is neither relevant nor authoritative, and the defendant offers no factual support for its statements that certain aspects of the '167 Patent are "functional" as that term is properly defined in the design patent context.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."). Innumerable possible designs were also available to Stanely when it chose to select the ornamental design of the Richardson patent for its products.

### 3. A Detailed Claim Construction Description is Neither Necessary nor Useful.

Stanley also errs by asking the Court adopt an extensive list of "ornamental features" of the claimed design for claim construction purposes. *Egyptian Goddess* specifically advises against such descriptions in design patent cases, instead suggesting that claim construction should simply refer to the drawing(s) in the patent.

*Egyptian Goddess* noted that design patents "typically are claimed as shown in drawings," and that claim construction "is adapted accordingly." *Arminiak & Assocs.*, *Inc.*, 501 F.3d at 1319; *see also Goodyear Tire & Rubber Co.*, 162 F.3d at 1116. For this reason, trial courts are not required to attempt to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents. *See Contessa Food Prods., Inc.*, 282 F.3d at 1377 (approving district court's construction of the asserted claim as meaning "a tray of a certain design as shown in Figures 1-3").

On the contrary, a patented design is better represented by an illustration than a description, and any description "would probably not be intelligible without the illustration." *See Dobson v. Dornan*, 118 U.S. 10, 14 (1886). The level of detail to be used in describing a patented design is a matter within the court's discretion, *see id.*, but given the difficulties entailed in trying to describe a design in words, *Egyptian Goddess* holds that attempting to construe a design patent by providing a detailed verbal description of the claimed design is not the preferred course. *See Egyptian Goddess,* 543 F.3d at 681-82.

In this case, all of the concerns expressed in *Egyptian Goddess* apply to the claim

Keresmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

construction proposed by Stanley.  A verbal description of the Richardson patent would be either too broad or too narrow to fully capture the design.  Words are simply ill-suited for communicating the "controlling consideration" of a design patent claim—namely, the *overall* appearance of *all* of the elements, including the relative and spatial relationships of each and every solid line in the claim.

Moreover, the construction proposed by Stanley suggests that its proposed verbal description of the Richardson design accurately and fully describes it.  But the Richardson patent, like all design patents, is claimed through drawings, and the best means by which to communicate each and every aspect of the claimed design is simply by looking at the drawings.  Why should the Court describe the drawings if it can look at them?

*Gorham* makes clear that the test for infringement is a visual test through "the eye of an ordinary observer," comparing images to images, not words to images.  It is the ordinary observer's perception of those drawings and their "resultant effect" that is the "controlling consideration."  Consequently, the Court should adopt a construction that directly employs the drawings, such as the construction approved by the Federal Circuit in *Contessa*: "a multi-purpose tool of a certain design as shown in Figures 1-6 of the Richardson patent." *See Contessa Food Prods., Inc.*, 282 F.3d at 1377.

**B.      Proper Claim Construction Relates to the Overall Design in View of the Prior Art.**

After *Egyptian Goddess*, the construction proposed by Stanley, which focuses on particular details without regard to the prior art, is wholly defective.  A proper construction under *Egyptian Goddess* construes the claim based on the drawing and the prior art.  "[W]hen the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused

Keysmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

designs with the prior art, as in many of the cases discussed above and in the case at bar." *Egyptian Goddess,* 543 F.3d at 667.

The prior art of record is shown in PSOF Exhibits D and E. These are the references considered by the examiner during the prosecution of the Richardson patent. As instructed by *Egyptian Goddess*, these prior art references should inform the Court as to whether an ordinary observer would consider the two designs to be substantially the same.

## IV.    INFRINGEMENT ANALYSIS

In applying the *Gorham* test, the perspective of the ordinary observer is "informed by a comparison of the patented design and the accused design in light of the prior art, so as to enable the fact-finder to determine whether the accused design had appropriated the inventiveness of the patented design." *Egyptian Goddess*, 543 F.3d at 674. Often, courts make a three-way visual comparison among the patented design, the accused design, and the closest prior art. *See Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 (Fed. Cir. 1992).

In such a comparison, if the patented design and the accused design look substantially similar, but nothing like the prior art, the accused design is infringing. If either the patented design or the accused design look, in a relative sense, more like the prior art, infringement is less likely. In other words, if the dissimilarities between the patented design and the prior art are repeated in the accused design, the relative similarity between the patented design and the accused design suggests a finding of infringement.

In the present case, the prior art tools shown in PSOF Exhibits D-E are substantially different from both the Richardson design and the Fubars. And the Fubars shown in PSOF Exhibits C-G are visually similar to the Richardson design shown in PSOF Exhibit F, sharing those visual elements that distinguish both the patented design

Keresmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

and the accused design from the prior art.   In fact, as the chart below demonstrates, the Fubars are virtually identical to the design of the Richardson patent, and are far more similar to the Richardson design than anything embodied in the prior art:



Non - Infringement                                                    Infringement

**Prior Art**                                                         **Patented Design**

Viewing this chart, the ordinary observer must notice the Fubars and Richardson design are indistinguishable when contrasted with the prior art; the prior art looks very different compared to both the Richardson design and the Fubars.  An ordinary observer familiar with the prior art and the Richardson design would conclude that the defendant's products were actually Richardson's.   (PSOF ¶ 34, 36, 40.)   Consequently, the Richardson patent is infringed.

    **A.  *L.A. Gear*, Not *OddzOn*, Applies to the Facts of this Case.**

    Stanley relies heavily on *OddzOn Products, Inc. v. Just Toys, Inc.,* 122 F.3d 1396 (Fed. 1997), for its contention that the Fubars do not infringe.   But even cursory read of *OddzOn* belies Stanley's argument.   In *OddzOn*, the plaintiff sued the defendant for

Keresmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

infringement of a design patent for a football with a tail and fins. *Id*. at 1400.



Fig.1

The defendant asserted that although it manufactured a football with wings, it did not infringe the plaintiff's patent because the design of a football with wings was purely functional. *Id*. at 1405-06. The district court agreed, and granted summary judgment in favor the defendant. *Id*. The plaintiff appealed, and the Federal Circuit affirmed. The court found that "the football shape combined with the fins on a tail [gives] the design functional qualities." *Id*. at 1406. The design concept of a football with an arrow-like tail was truly functional, because the design was ***wholly dictated by the function***—there was no other way to achieve the functionality without adding an arrow-like tail to the football, and no ornamentation beyond this functionality was incorporated into the design. *See id*. For this reason, the court of appeals affirmed summary judgment in favor of the defendant. *See id.*

The instant case is not analogous to *OddzOn*. First, there are multiple designs that could accomplish the same functions as the '167 Patent. Second, the patented design includes ornamentation that is replicated in the defendant's tools. (*See* PSOF ¶ 43.) Some of these designs are set-forth in PSOF Exhibits D and E.

Instead, this case is analogous to *L.A. Gear*. In *L.A. Gear,* L.A. Gear sued the defendant for infringement of its design patent for "Hot Shots" shoes. *Id*., 988 F.2d at 1122. L.A. Gear's "Hot Shot" shoes appear on the left below, with the defendant's design on the right:

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

Keresmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001



The defendant asserted that the design of the "Hot Shots" shoes was purely functional. *Id*. at 1124. In support of its argument, the defendant identified several functional elements of the "Hot Shots" design including: "the mesh on the side of the shoe [which] also provides support; the moustache at the back of the shoe [which also] provides cushioning for the Achilles tendon and reinforcement for the rear of the shoe." *Id*. Since each of these design features allegedly had a function, the defendant argued that "the position of each of these elements on the shoe is due to its function" and could not be protected by a design patent. *Id*. The district court disagreed and found that the defendant had infringed the "Hot Shots" shoe design. *Id*. The defendant appealed.

On appeal, the Federal Circuit affirmed the trial court's ruling on infringement. The court held that while each element of the patented shoe design had a useful purpose and the position of each of these elements on the shoe was due to its function, the overall design of the shoe was nevertheless ornamental. *Id*. at 1125. The court stated:

> [T]he utility of each of the various elements that comprise the design is not the relevant inquiry with respect to a design patent. In determining whether a design is primarily functional or primarily ornamental ***the claimed design is viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article***, in

determining whether the claimed design is dictated by the utilitarian purpose of the article.

That elements of the '081 design, such as the delta wing or the side mesh, also provide support for the foot does not mean that the specific design of each element, and the combination of these elements into the patented design, is dictated by primarily functional considerations. ***The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent***.

*Id.* (emphasis added).

In the instant case, Stanley parrots the arguments made by the *L.A. Gear* defendant, and those arguments fail here as well. Like the "Hot Shots" shoes in *L.A. Gear*, the '167 Patent design has functional parts ***but these functional parts do not dictate the overall design of the tool***. Unlike the football with wings in *OddzOn*, the functional parts of the '167 Patent could have been put together in any number of ways and still function properly. (*See* PSOF ¶ 43.) Critically, Stanley choose to put those functional parts together ***in the same arrangement as the '167 Patent***. Accordingly, this case is governed not by *OddzOn,* but by *L.A. Gear*—and like the patents in that case*,* the '167 Patent has been infringed.

**B. Stanley's Patents Are of Marginal Relevance.**

In its motion, Stanley argues that its receipt of a patent for one of the Fubar designs is evidence of non-infringement. This is utterly misleading. The tests for patentability and infringement are quite different, and the tests applied by an examiner in the Patent and Trademark Office to determine patentability are completely unrelated to those applied by a court to evaluate infringement. For example, a PTO examiner reviews patent applications from the perspective of a person of ordinary skill in the art, not as an ordinary observer.

Stanley cites *National Presto Indus., Inc. v. Wes Bend Co.*, 76 F.3d 1185, 1192

(Fed. Cir. 1996), for the proposition that "separate patentability is relevant and is entitled to due weight." But *National Presto* expressly recognizes that separate patentability does prove noninfringement:

> The grant of a separate patent on the accused device ***does not automatically avoid infringement***, either literal or by equivalency. Improvements or modifications may indeed be separately patentable if the requirements of patentability are met, yet the device may or may not avoid infringement of the prior patent. *See, e.g., Atlas Powder Co. v. E.I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1580-81, 224 USPQ 409, 417 (Fed.Cir.1984) (improvement in a step of a patented process, although separately patentable, did not avoid infringement under the doctrine of equivalents). Whether a modified device is within the scope of the prior patent, literally or by equivalency, depends on the particular facts. The fact of separate patentability is relevant, and is entitled to due weight. However, West Bend's statement that there cannot be infringement as a matter of law is incorrect.

*National Presto* at 1191-92. Thus, while the existence of Stanley's patent may have some evidentiary value, its argument that the patent is compelling evidence of noninfringement is false. Because Stanley has a patent mandate neither a finding of noninfringement nor prevents a finding of infringement.

## V.  THE COURT SHOULD DENY SUMMARY JUDGMENT ON WILLFULNESS.

The parties agree that the standard for willful infringement following *In re Seagate* is whether "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate,* 497 F.3d 1360, 1371 (Fed. Cir. 2007). Without any analysis of the facts or the law, Stanley in effect argues that because it has not infringed the Richardson patent, willfulness is moot—or, at best, that it just barely infringed the Richardson patent, so there could be no finding of recklessness.[2] Stanley does not attempt to show any facts outside its (non)infringement analysis to suggest it was not reckless. Accordingly, this bald assertion does not suffice

_____

[2] Stanley has not raised an opinion of counsel defense to willfulness.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

to defeat Richardson's claim of willful infringement at the summary judgment stage, when the non-movant is entitled to all reasonable inferences from the undisputed material facts.

"The determination of willfulness is ordinarily a question of fact for the jury," and "need not be proved directly, but may be inferred from the defendant's conduct." *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.,* 446 F.Supp.2d 1164, 1173-74 (E.D. Cal. 2006). While *UMG Recordings* is a case involving copyright infringement, the test for willfulness in the copyright context employs the same "recklessness" standard that *In re Seagate* adopted for patent infringement. *See In re Seagate*, 497 F.3d at 1370 (citing with approval the recklessness standard in the copyright infringement case *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 112 (2d. Cir. 2001)). In this case, the jury should evaluate the issue of willfulness at trial, but even at this early stage, willful infringement can nevertheless be inferred from Stanley's conduct.

As discussed above, Stanley's infringement is plain to the ordinary observer and there is direct—as well as inferred—evidence of willfulness. Stanley does not dispute that, prior to the Fubars' introduction to the marketplace, Richardson provided the '167 Patent to Stanley. And the similarity of the Richardson design to the Stanley products is so apparent to the ordinary observer that Stanley's behavior can only be characterized as reckless. *See Kellogg v. Nike, Inc.,* 2008 WL 3875299, *2 (D. Neb. Aug. 14, 2008) (in refusing defendant's summary judgment motion on willfulness, court found three dispositive facts: prior knowledge of patentee's rights by defendant, unresolved question whether defendant thereafter sought legal opinion on its potential infringement, and— noting designs need not be identical to find infringement—the overall similarity of the patented design and the accused design.) Therefore, in view of Stanley's prior knowledge of the Richardson patent, Richardson is entitled on summary judgment to the inference that Stanley deliberately copied the Richardson design and proceeded to

infringe the Richardson patent with reckless disregard of Richardson's valid patent. Stanley is not entitled to judgment as a matter of law on the issue of willfulness.

**VI.    CONCLUSION**

In light of the Federal Circuit's recent decision in *Egyptian Goddess*, this case is not complicated.   "[T]he question … is whether an ordinary observer, familiar with the prior art [], would be deceived into believing the [accused design] is [substantially the] same as the [patented design]." *Egyptian Goddess,* 543 F.3d at 681.   Here, when the Fubars are compared to the '167 Patent, they are substantially similar to the patented design, and they more closely resemble the '167 Patent than the prior art.   Accordingly, the Court can and should find infringement as a matter of law.

Stanley cannot avoid this fate by arguing that certain portions of the '167 Patent are functional.   Case law conclusively shows that the '167 Patent must be viewed as a whole.   While aspects of the '167 Patent design may serve useful purposes, the inclusion of such elements does not affect the ornamental nature of the overall design.   Tools like Stanley's infringe the Richardson patent because the accused product *as a whole* is substantially similar in appearance to the patented design.   For this reason, the Court should deny Stanley's motion for summary judgment on infringement and willfulness, and grant Richardson summary judgment on the issue of infringement.

Kregsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

DATED this 19th  day of December, 2008.

KERCSMAR & FELTUS PLLC


By  /s/Greg Collins
    Geoffrey S. Kercsmar
    Gregory B. Collins
    6263 N. Scottsdale Road
    Scottsdale, Arizona  85250

    Daniel J. Noblitt
    THE NOBLITT GROUP PLLC
    4800 North Scottsdale Road, Suite 6000
    Scottsdale, Arizona 85251-7630
    Telephone: (480) 994-9869

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19th 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Charles Alan Struble
Renaud Cook Drury Mesaros, PA
One North Central, Suite 900
Phoenix, Arizona 85004

Bryan P Collins
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd
McLean, VA

I further certify that on December 19, 2008, I served a courtesy copy of the aforementioned document and transmittal of a Notice of Electronic Filing by mail on the following:

The Honorable Neil V. Wake
United States District Court
401 West Washington Street, SPC 52
Phoenix, AZ  85003

/Greg Collins