**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Richardson, an individual, ) | No. CV08-1040-PHX-NVW |
| ) | |
| Plaintiff, ) | **FINDINGS OF FACT,** |
| ) | **CONCLUSIONS OF LAW, AND** |
| vs. ) | **ORDER** |
| ) | |
| Stanley Works, Inc., a foreign corporation,) | |
| ) | |
| Defendant. ) | |
| ) | |

This suit concerns the alleged infringement by Defendant The Stanley Works, Inc. ("Stanley") of a design patent held by Plaintiff David A. Richardson ("Richardson"). The parties previously submitted cross-motions for summary judgment on the issues of infringement and wilfulness. (Doc. ## 30, 46.) Stanley also moved to strike Richardson's untimely jury demand. (Doc. # 29.) The Court granted Stanley's motion on February 13, 2009. (Doc. # 50.) On February 20, 2009, the parties stipulated to proceed to trial on the merits of the infringement issue, relying on the briefing and evidence presented with their cross-motions for summary judgement. Trial of the infringement issue took place on April 2, 2009. This order states findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

**I. Factual Background**

Richardson has worked in the field of carpentry for 29 years. He designed a carpentry tool that combines a conventional hammer with a stud climbing tool and a

1  crow-bar, calling it the "Stepclaw."  The U.S. Patent and Trademark Office awarded
2  Richardson U.S. Design Patent No. D507,167 ("the '167 patent") for the Stepclaw on
3  July 12, 2005.  Figure 1 of the '167 is shown below:

9  Richardson marketed the Stepclaw as "a hammer that, when needed, can become a handy
10 step for performing a variety of overhead work.  The primary objective of this tool is to
11 work as a hammer and also as a step to elevate the worker without a ladder . . . ."  The
12 tool accomplishes its step function through a "jaw" that faces opposite the hammer's
13 striking surface.  A worker can slot the jaw over exposed wood framework and then step
14 up onto the handle of the tool.  The jaw has teeth that "wrap[] around the framework,
15 [and] hold[] onto wood."

16      After Richardson obtained his patent, Stanley began selling a tool for use in
17 carpentry, demolition, and construction called the "Fubar."  Stanley sells five versions of
18 the Fubar.  All five versions consist of a jaw with teeth facing opposite a hammer-head
19 and a crow-bar located on the opposite side of the handle from the hammer and jaw.  The
20 U.S. Patent and Trademark Office awarded Stanley U.S. Design Patent No. D562,101 for
21 one of its Fubar designs.  Figure 1 of Stanley's patent is shown below:



1 **II. Analysis**

2    **A. Claim Construction**

3    Design patents protect only "the novel, ornamental features of the patented design," not the functional elements. *Edson Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (citing *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988)). "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc) (quoting *Edson*, 122 F.3d at 1405).

    If a given "configuration is made imperative by the elements which it combines and by the utilitarian purpose of the device," that configuration is functional and not protected by a design patent. *Lee*, 838 F.2d at 1188 (quoting *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933)). If, on the other hand, "there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

> Other appropriate considerations might include: whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*Berry Sterling Corp. v. Prescor Plastics Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997).

    Richardson's claim is for the ornamental design of a multifunction stud climbing and carpentry tool, as shown and described in the '167 patent. His design incorporates four primary utilitarian elements: the handle, the hammer-head, the jaw, and the crow-bar. The overall configuration of these four elements is dictated by the functional purpose of the tool and therefore is not protected by his design patent. A designer seeking to incorporate a hammer-head, jaw, and crow-bar on a single handle will naturally and inevitably place the jaw and hammer-head together on one end and the crow-bar on the

1 other end. To place the jaw and hammer-head on opposite ends of the handle would
2 distribute the tool's mass, decreasing the striking force and interfering with the user's
3 swing. It would also adversely encumber the crow-bar, which would have to be placed
4 together with one of the other elements and thus would no longer fit into narrow spaces.

5 The prior art illustrates the functional necessity of placing the hammer-head and
6 jaw at one end of the handle and the crow-bar at the other end. Every piece of prior art
7 identified by the parties that incorporates similar elements configures them in the exact
8 same way. (*See* Doc. # 42, Exs. D & E.) A hammer-head and a jaw or claw are always at
9 one end of the handle, facing in opposite directions. A crow-bar is always alone at the
10 opposite end of the handle. The number of other patented designs that use this
11 configuration and the absence of alternative designs strongly suggest that this
12 configuration is the best configuration and that it is dictated by functional, not
13 ornamental, considerations. The '167 patent does not protect the configuration of the
14 handle, hammer-head, jaw, and crow-bar utilized in the Stepclaw.

15 An astute observer of the prior art will note that the jaw or claw element of the tool
16 can take many different forms. The proliferation of so many types of jaw or claw designs
17 opposite the hammer-head suggests that ornamental considerations may play a larger role
18 in the design of that specific portion of the tools. Nevertheless, the design for the jaw of
19 Richardson's Stepclaw was primarily influenced by functional considerations. According
20 to his marketing, the Stepclaw was designed to function as "a hammer that, when needed,
21 can become a handy step" by slotting the jaw over exposed wood framework and then
22 stepping up onto the handle. Therefore, by necessity, the jaw had to consist of two
23 straight sides that could slot over a wooden board at a right angle to the handle, which
24 would then serve as the step. That basic, wrench-like design is functional and therefore
25 not protected by the '167 patent.

26 The '167 patent does protect the ornamental aspects of Richardson's design, which
27 include, among other things, the standard shape of the hammer-head, the diamond-shaped
28 flare of the crow-bar and the top of the jaw, the rounded neck, the orientation of the crow-

bar relative to the head of the tool, and the plain, undecorated handle. Richardson's advertising admits that the teeth of the jaw serve the function of gripping onto wooden framework. However, the particular number and size of teeth can be altered without adversely affecting that function and thus Richardson's choice in those respects can reasonably be said to be dictated by ornamental considerations. This discussion has highlighted the most significant ornamental aspects of Richardson's design.

### B. Infringement

The sole test for determining whether a design patent has been infringed is the ordinary observer test. *Egyptian Goddess*, 543 F.3d at 678. As articulated by the Supreme Court,

> [i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871). The ordinary observer test is to be applied "through the eyes of an observer familiar with the prior art." *Egyptian Goddess*, 543 F.3d at 677. Furthermore, in performing the test, "[t]he trial court is correct to factor out the functional aspects of various design elements, but that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison." *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006). Rather, "it is the appearance of a design as a whole which is controlling in determining infringement." *Edson*, 122 F.3d at 1405. If the "patented design as a whole is substantially similar in appearance to the accused design," there is infringement. *Id.*

For example, in *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988), the plaintiff argued that his patent covered a "massage device wherein an elongated handle has two opposing balls at one end, and that the patent is perforce infringed by a massage device with that general configuration." The court rejected that argument, explaining that "by obtaining a design patent, not a utility patent, Mr. Lee

limited his patent protection to the ornamental design of the article." *Id.* The ornamental elements of the design included "the wooden balls, their polished finish and appearance, the proportions, [and] the carving on the handle," but not the overall configuration of an elongated handle with two opposing balls at one end. *Id.* "A device that copies the utilitarian or functional features of a patented design is not an infringement unless the ornamental aspects are also copied, such that the overall 'resemblance is such as to deceive.'" *Id.* (citing *Gorham*, 81 U.S. (14 Wall.) at 528). Because the accused design copied only the functional configuration of elements and not the ornamental aspects of the protected design, the court held that no infringement had occurred.

As in *Lee*, the similarity between Richardson's and Stanley's design is limited to the overall configuration of functional elements: an opposing hammer and jaw at one end of the handle and a crow-bar at the other. That configuration is functional and ubiquitous in the prior art. Looking carefully at the jaw, Stanley's design does resemble Richardson's design more closely than any other tool in the prior art. In both Richardson's and Stanley's designs, the jaw consists of two straight sides oriented at a right angle to the handle, much like an oversized wrench. Such a design is similar to three pieces of prior art identified by the parties: U.S. Patent Nos. 5,850,650; Des. 291,401; and Des. 300,111. However, none of the prior art designs are as similar to Richardson's design as is Stanley's.

Nonetheless, it has already been concluded that such a design was influenced by primarily functional considerations. Since functional necessity dictates the overall configuration of the hammer, jaw, handle, and crow-bar, Richardson had to design the jaw the way he did to fulfill one of the tool's "primary objectives," namely to function as "a step to elevate the worker without a ladder." Stanley's tool uses a similar jaw design to achieve a demolition function.[1] The user can slot the jaw over exposed wooden

---

[1] Although Stanley's jaw design is structurally similar to Richardson's, it is not an exact copy. For example, in Stanley's design, the top side of the jaw is longer than the

- 6 -

1  framework and rip it out of position.  Stanley's design would work better for such a
2  function than any of the three noted pieces of prior art.  The basic jaw design used by
3  Richardson and Stanley, which is two straight sides oriented at a right angle to the handle,
4  is primarily functional.  The '167 patent does not give Richardson a monopoly on that
5  basic, wrench-like design for a jaw and therefore Stanley's use of that design does not
6  weigh in favor of a finding of infringement.

7  There is little similarity between the ornamental features of Richardson's and
8  Stanley's designs.  To name just a few such features, Richardson's design incorporates a
9  standard shaped hammer-head, a diamond-shaped flare near the crow-bar and the top of
10 the jaw, teeth only on the bottom side of the jaw, a rounded neck, a crow-bar that faces
11 the same direction as the hammer-head, and a plain, undecorated handle.  None of the five
12 versions of the Fubar copies any of these elements.  They all have a tapered hammer-
13 head, a streamlined crow-bar and top of the jaw, teeth on both sides of the jaw, a more
14 triangular neck, a crow-bar oriented at a right angle to the hammer-head, and an
15 embellished handle.  Although this is not a comprehensive list of the ornamental aspects
16 of either design, these are the areas of greatest departure.  Taken altogether, the
17 ornamental differences between the two tools are substantial.  From the perspective of an
18 ordinary observer familiar with the prior art, the overall visual effect of the Fubar is
19 significantly different from the Stepclaw.  An ordinary observer would not be deceived
20 into thinking any of the Fubar designs are Richardson's Stepclaw.

21 Richardson argues that because "it is the appearance of a design as a whole which
22 is controlling in determining infringement," *Edson*, 122 F.3d at 1405, the functional
23 elements of his design must be included when comparing it with the Fubar.  Richardson's
24 argument distorts functionality beyond all recognition.  In performing the ordinary
25 observer test, "[t]he trial court is correct to factor out the functional aspects of various
26 design elements."  *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372

27 ───────────
28 bottom.  In Richardson's, both sides of the jaw are the same length.

- 7 -

1  (Fed. Cir. 2006); *see also Edson*, 122 F.3d at 1405 ("The patentee 'must establish that an
2  ordinary person would be deceived by reason of the common features in the claimed and
3  accused designs *which are ornamental*.'") (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d
4  816, 825 (Fed. Cir. 1992)) (emphasis supplied); *Lee*, 838 F.2d at 1186 ("Thus it is the
5  non-functional, design aspects that are pertinent to determinations of infringement."). In
6  discounting the functional elements, the trial court simply "must not convert the overall
7  infringement test to an element-by-element comparison." *Amini*, 439 F.3d at 1372; *see
8  also id.* at 1371 ("[D]eception that arises is a result of similarities in the overall design,
9  not of similarities in ornamental features *considered in isolation*.") (emphasis supplied).

10  Richardson heavily relies upon *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d
11  1117 (Fed. Cir. 1993), to argue that the functional elements of his design should be
12  included in the infringement analysis. There, the court rejected a defendant's argument
13  that since each element of a shoe design served a specific utilitarian purpose the design of
14  the shoe was functional and the design patent consequently invalid. It noted that simply
15  because each element of a design performs a function "does not mean that the specific
16  design of each element, and the combination of these elements into the patented design, is
17  dictated by primarily functional considerations." *Id.* at 1123. Rather, because there were
18  "other ways of designing athletic shoes to perform the functions of the elements of the
19  [patented shoe design]," the design as a whole was not primarily functional but rather
20  ornamental.

21  Unlike the shoe design in *L.A. Gear*, functional necessity dictated the basic
22  configuration of the Stepclaw's hammer-head, jaw, crow-bar, and handle. Because that
23  configuration "is essential to the use of the article, it can not be the subject of a design
24  patent," and Richardson cannot rely on the perception of similarity between the Fubar and
25  the Stepclaw that arises from it. *Id.* After discounting the functional aspects of
26  Richardson's design, an ordinary observer of the Fubar would not be deceived because
27  the ornamental differences between it and the Stepclaw are, taken altogether, too
28

- 8 -

substantial. The overall visual effect of the Fubar is not substantially similar to the Stepclaw, so the '167 patent has not been infringed.

Stanley is entitled to judgment against Richardson because the '167 patent has not been infringed. Since there is no infringement, Stanley's motion for summary judgment on the issue of wilful infringement is moot.

IT IS THEREFORE ORDERED that the Clerk enter judgment against Plaintiff and in favor of Defendant and that Plaintiff take nothing. The Clerk shall terminate this action.

IT IS FURTHER ORDERED that Plaintiff's cross-motion for summary judgment on willful infringement (doc. # 46) is denied as moot.

DATED this 6th day of April, 2009.

Neil V. Wake
United States District Judge